No. 2507

Second Circuit

_____

WHITLATCH v. MILWEE

_____

(May 22, 1928. Opinion and Decree.)

_____

(*Syllabus by the Editor*)

1. **Louisiana Digest—Reconvention — Par. 19; Landlord and Tenant—Par. 67, 69.**
Where defendant fails to show the amount of damage claimed in his reconventional demand for water damage to household goods in leased premises, reconventional demand must be rejected.

Appeal from the First Judicial District Court, Parish of Caddo. Hon. J. E. Stephens, Judge.

Action by William T. Whitlatch against T. F. Milwee.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Dickson and Denny, of Shreveport, attorneys for plaintiff, appellee.

Crow and Coleman, of Shreveport, attorneys for defendant, appellant.

ODOM, J. On April 10, 1924, plaintiff leased to defendant a residence in the City of Shreveport for one year beginning April 15, 1924, for $600.00, to be paid monthly, and took twelve notes each for $50.00.

Defendant moved into the house at once and occupied it until some time in the early part of 1925, when he abandoned it.

He paid seven of the twelve notes. Upon his refusal to pay the other five notes plaintiff brought this suit and had defendant's household furniture provisionally seized.

Defendant, in answer, admitted that he leased the premises for one year, and signed the notes sued on, but resists the demand on the ground that plaintiff failed to keep the leased premises in repair and in condition for the purposes for which it was leased:

"That said premises became practically untenantable and uninhabitable during said period of time,"

and he set up specifically that the roof became leaky and that some of his bedding, rugs, etc., got wet when it rained, and he was thereby damaged $250.00 for injury to his property

"* * * and because of the annoyance and inconvenience of your defendant and his family."

He alleged that it became necessary for him to make some repairs on the dwelling "* * * at a heavy expense to defendant, all of which repairs were necessary repairs which the plaintiff, being the lessor, was bound under the law to make; that said repairs made by your defendant will fully offset any amount which your defendant may be due the plaintiff for rent, which repairs, labor and materials done and furnished by your defendant he specially pleads in compensation and set off of plaintiff's demands."

In reconvention he claims $50.00 attorney's fees, $50.00 for loss of time employing counsel and attending court, $250.00 for injury and damage to his household goods caused by water due to the leaky roof, and "because of the annoyance and inconvenience to your defendant and his family," and $500.00 for humiliation on account of the seizure of his goods.

The lower court rendered judgment for plaintiff as prayed for and rejected defendant's reconventional demands. Defendant appealed.

## OPINION

Counsel for defendant, in their brief, say:

"The main and only seriously controverted question involved in the case is the question of offsets, pleaded by the defendant, and his reconventional demand."

Adopting counsel's view of the issues involved, which, we think, is correct, we have reached the conclusion and hold that the judgment appealed from is correct.

The burden of defendant's complaint is that the roof of the dwelling leaked and that when it rained his household goods got wet and were damaged, and, further, that he made expensive repairs on the property which it was the duty of the lessor to make, which repairs more than offset the amount of rent due.

As to the repairs which defendant alleged that he made, he admitted on the stand that he made no repairs to the property except some minor adjustments to plumbing fixtures for which he made no charge, and about which he said nothing to plaintiff. He does not even intimate the value of the work which he says he did, from which we infer that he made only such minor repairs or adjustments to the plumbing which he understood it was the custom of lessees to make. The testimony shows that at one time during the lease, the wife of defendant telephoned plaintiff that the plumbing in the bathroom was out of repair and that plaintiff at once sent a plumber to make the repairs and paid the bill, amounting to $9.05.

So that the issue is finally narrowed down to the question of the damage to defendant's furniture on account of leaks in the roof of the dwelling.

We are impressed that defendant did not at any time during the lease seriously consider the matters which he set up in defense of this suit.

He testified that he did not at any time personally complain to plaintiff that the house leaked or that his property had been damaged. He testified that the only time he said anything to plaintiff about the roof was the day on which he signed the lease contract, and then "I did not press it very hård, but it was supposed to be taken care of." He went into the house, lived there for something like ten months, paid seven months' rent, made no complaint, no repairs, and asked for no reductions.

Having failed to pay the rent for notes due November, December and January 15th, respectively, plaintiff wrote defendant on January 27, 1925, calling his attention to the fact that these notes were past due and said:

"I will therefore insist that you arrange to take up the three outstanding notes at once, otherwise I will be obliged to give them to my attorney for collection. You must pay these notes by February 1st in order to save the 10% attorney's fees and avoid being sued."

Defendant testified that upon receipt of that letter he called plaintiff over the telephone and told him that it was not necessary to take action, and upon being asked if he at that time made any complaint about the damage to his household goods on account of the leaky roof, he replied: "No, I did not make any at that time."

The plaintiff testified that defendant called him over the 'phone after receiving the letter, and told him: "He would settle the whole matter within a few days."

It seems reasonable that if defendant had any serious ground of complaint he would have urged it at that time, as he was threatened with suit on the notes; but he made no complaint and said nothing about the alleged leaky condition of the roof and the damage to his goods until after this suit was filed on February 12, 1925, and then made none, except in his answer, which was filed on February 26th.

It is also significant that defendant, in his answer, alleged that he had made expensive repairs to the building which more than offset the amount of rent due, and yet as a witness he admitted that he made no repairs of any consequence, and made no claim for any.

As to whether the roof leaked, there is serious dispute. Plaintiff testified that he had the roof repaired before defendant moved in, and he called as a witness Mr. Griffin, a building contractor, who said that plaintiff employed him to repair the roof and that he did so and thought it was in good condition when he left it.

Plaintiff also called as witnesses Mr. Teagle and Mr. Smith, who testified that they went with plaintiff to the house after defendant moved out, on one occasion immediately following a heavy, blowing rain, and that they carefully inspected the premises and found no evidences of leaks.

On the other hand, defendant's wife and her father, who lived there, both testified that the roof leaked badly and that the rugs and the bedding got wet on several occasions.

If it be conceded, however, that the roof did leak and that defendant and his family were on that account made to suffer some inconvenience, and that his goods were damaged to some extent, and if it be conceded as counsel for defendant argue, that under the law plaintiff is responsible for the damage, the testimony as to the

amount of damage is not such as to enable the court to render a judgment therefor.

Plaintiff's wife and her father testified that the beds and the rugs got wet and that it was necessary to put them out to dry, that some of the bedding faded, and that the rugs were discolored; but neither pretended to estimate the damage to the bedding or the rugs.

Mrs. Milwee said that she was having the rugs "reworked" at a cost of $75.00, but it is not clear that the rain caused all the damage to them. She had three rugs which she said had been in use several years. They were worth, when new, she said, about $40.00 each. She was asked: "Well, what is the appearance of them since it rained on them?" and she replied: "Well, one is faded and old looking."

Mrs. Milwee's father said something about the piano getting wet and that she was having it gone over; but Mrs. Milwee said nothing about the piano being damaged by the rains, and it seems reasonable that if she had thought so she would have said so.

There is not sufficient testimony in the record as to the amount of damage to enable the court to render a judgment.

Counsel say in brief, after citing and discussing the law which they consider applicable, that the court should allow defendant "the full amount of what the proof shows his losses were;" but "there's the rub." The proof does not show what his losses were, so that even if the law cited is applicable, the defendant's case falls for lack of proof.

This dispenses with the necessity of discussing the law points raised in counsel's brief.

Judgment affirmed with costs.